Peter Kristofer Strojnik, State Bar No. 242728
strojnik@skplaw.com
**THE STROJNIK FIRM LLC**
**A LIMITED LIABILITY COMPANY**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:   (602) 773-0370

Attorneys for Plaintiff THERESA BROOKE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| AMERICANA MOTEL, INC., a California corporation dba Best Western Corde Madera, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff alleges:

## PARTIES

1.      Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,

1    52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a

2    wheelchair due to the loss of a leg.

3    　　　　2.　　　Defendant, Americana Motel, Inc., owns and/or operates and does

4    business as the hotel, Best Western Corde Madera located at 56 Madera Boulevard,

5    Corde Madera, California 94925. Defendant's hotel is a public accommodation

6    pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging services.

7    　　　　　　　　　　　　　　**INTRODUCTION**

8    　　　　3.　　　Plaintiff Theresa Brooke brings this action against Defendant, alleging

9    violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

10   seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights

11   Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act

12   ("DPA"), California Civil Code §§54-54.3.

13   　　　　4.　　　Plaintiff is a disabled woman confined to a wheelchair. She brings this

14   civil rights action against Defendant for failing to design, construct, and/or own or

15   operate hotel facilities that are fully accessible to, and independently usable by, disabled

16   people. Specifically, Defendant's hotel, which is a place of public accommodation, has

17   barriers to use of the swimming pool facilities. Defendant's swimming pool facilities do

18   not have acceptable means of entry for disabled persons, notwithstanding that such

19   modifications are readily achievable. Therefore, Plaintiff seeks a declaration that

20   Defendant's hotel violates federal law and an injunction requiring Defendant to install

21   means of access in compliance with ADA requirements so that the swimming pool

22   facilities are fully accessible to, and independently usable by, disabled individuals.

23   Plaintiff further requests that, given Defendant's historical failure to comply with the

24   ADA's mandate, the Court retain jurisdiction of this matter for a period to be

25   determined to ensure that Defendant comes into compliance with the relevant

26   requirements of the ADA, and to ensure that Defendant has adopted and is following an

27   institutional policy that will, in fact, cause Defendant to remain in compliance with the

28   law.

5.    In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona 85016.

## JURISDICTION AND VENUE

6.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

7.    Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

9.    On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

10.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11.    Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

12.    On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13.    Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

14. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[1]

20. Notably, the lodging industry requested and received a number of extensions of time before the mandatory requirements of Section 242.2 of the 2010 Standards, concerning access to pools, became effective. Notwithstanding, the industry remains largely noncompliant with the requirements.

---

[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for existing pools to comply did not become effective until January 31, 2013, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

## CORRESPONDING STATE LAW STATUTES

21.   Unruh Civil Rights Act and the California Disabled Persons Act incorporate ADA standards, so a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586, 81 Cal. Rptr. 3d 144 (2008); *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

22.   Unruh provides for injunctive relief, monetary damages in an amount not less than $4,000.00, and for the recovery of attorney's fees and costs.

23.   The DPA provides for monetary damages in an amount not less than $1,000.00 and for the recovery of attorney's fees and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

24.   Plaintiff and her husband are avid travelers to California. For example, just in the few months Plaintiff has visited the Bay and California several times. Due to Plaintiff's many special needs, she requires the use of lodging rooms that are accessible to her and have the standard accessibility features such as roll-in showers, adequate spacing around the furniture in the lodging room, grab bars surrounding the toilet, and other commonly-accepted accessibility features.

25.   In addition to Plaintiff having to rely on a wheelchair for locomotion due her having only one leg, she also suffers from arthritic pain. While on trips with her husband, she needs the use of the hotel swimming pool and Jacuzzi, as both help soothe her arthritic pain. In fact, lack of access to a hotel's pool facilities is a non-starter for her if she is to book a room.

26.   Without the presence of an ADA-compliant pool lift that is in position for use, it is impossible for Plaintiff to enter a swimming pool or Jacuzzi.

27.   On or about August 6, 2017, Plaintiff was in Corde Madera and went to Defendant's hotel to book a room. Prior to booking the room, Plaintiff went to the pool area to ensure that there was disability access for both the pool and Jacuzzi to ensure she could utilize the pool facilities while lodging at Defendant's hotel. However,

1   Plaintiff personally encountered and saw that there was no disability access to the hotel

2   Jacuzzi because there are steps leading to the Jacuzzi and no pool lift. Additionally,

3   Plaintiff would not be able to access the pool because while there is a pool lift, it is

4   propped onto a 10-inch wall that surrounds the entirety of the swimming pool – a sort of

5   attempt at a quasi-transfer wall. Consequently, since Plaintiff cannot access the hotel

6   Jacuzzi and pool, she was deterred from lodging at Defendant's hotel and decided to not

7   book a room.

8       28.   Plaintiff has personal knowledge of a barrier related to her disability, that

9   is, the swimming pool facilities at Defendant's hotel are inaccessible to her by virtue of

10   her confinement to a wheel chair, and is currently deterred from returning to

11   Defendant's accommodation by this accessibility barrier. Therefore, she has suffered an

12   injury-in-fact for the purpose of her standing to bring this action.

13      29.   Without the presence of a fixed pool lift or other means of permitting

14   Plaintiff equal access to Defendant's pool facilities, Plaintiff's disability prevents her

15   from equal enjoyment as able-bodied persons have.

16      30.   Plaintiff has been to the Bay Area several times in the past year and in

17   fact has several more over the coming months including one in September and one in

18   November.

19      31.   As a result of Defendant's non-compliance with the ADA, Plaintiff did

20   not lodge at the Defendant's place of accommodation. However, notwithstanding the

21   barriers at issue, Plaintiff will lodge at Defendant's hotel during one of her planned trips

22   as noted above, as it is anticipated that Defendant will have remediated the barriers in

23   the coming months. This will allow Plaintiff to stay at the hotel and be treated equally

24   and have full access during her stay.

25      32.   As a result of Defendant's non-compliance with the ADA, Plaintiff,

26   unlike persons without disabilities, cannot independently use Defendant's swimming

27   pool facilities.

28

33.     In violation of Section 242.2 of the 2010 ADA Standards, Defendant's swimming pool facilities have at least one barrier to entry.

34.     As a disabled person, Plaintiff has a keen interest in whether public accommodations that offer public lodging services are fully accessible to, and independently usable by, the disabled, specifically including an interest in ensuring that pools and spas possess all of the features required by the 2010 Standards.

35.     Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's hotel due to the lack of access to the pool facilities.

36.     Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel swimming pool facilities in violation of her rights under the ADA.

37.     Other potential violations and barriers to entry at Defendant's hotel may be discovered through an expert inspection of the hotel property pursuant to Rule 34. So as to avoid piecemeal litigation to ensure full access to the entirety of the property at issue, Plaintiff will amend her complaint to allege and all additional barriers discovered during the Rule 34 inspection. *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008).

## **FIRST CAUSE OF ACTION**
### **(Violation of Title III the Americans with Disabilities Act)**

38.     Plaintiff incorporates all allegations heretofore set forth.

39.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

40.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C.

§12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

41.    In violation of Section 242.2 of the 2010 Standards, Defendant's swimming pool and/or spa as described above do not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

42.    Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. *Id*.

43.    Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the 2010 Standards, as described above, is readily achievable by the Defendant due to the low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

44.    Conversely, the cessation of compliance with the ADA law is also readily achievable by the removal of a fixed lift. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[3].

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

[3] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

45.     Defendant's conduct is ongoing, and, given that Defendant has never fully complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

46.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its pool facilities be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that all of its pools were fully accessible to, and independently usable by, disabled individuals;

b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable,  a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2)

---

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by Sections 242.2 and 1009.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $3,500.00; and,

e. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

## <u>SECOND CAUSE OF ACTION</u>
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

47.    Plaintiff realleges all allegations heretofore set forth.

---

[4] As applicable to ADA cases, see *Coppi v.  City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

48. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

49. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

50. Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

51. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

52. Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

11

d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

f.  For damages in an amount no less than $4,000.00; and

g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## THIRD CAUSE OF ACTION
### (Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)

53.  Plaintiff realleges all allegations heretofore set forth.

54.  Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

55.  The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

56.  Plaintiff has been damaged by the Defendant's non-compliance with the DPA.

57.  Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

58.  Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its pools into full

compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable , the payment of costs of suit; and

d.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of attorneys' fees;

e.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

f.  For damages in an amount no less than $1,000.00; and

g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this 8th day of August, 2017.

**THE STROJNIK FIRM L.L.C.**



Peter Kristofer Strojnik (242728)
Attorneys for Plaintiff

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION COMPLIANT WITH R10-3-405**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of August, 2017.

Theresa Brooke